UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

RITO BILL SANCHEZ,                                      Case no. 19-12102-t7

    Debtor.

ROGER MOORE,

    Plaintiff,

v.                                                                Adv. no. 19-1082-t

RITO BILL SANCHEZ,

    Defendant.

## **OPINION**

Before the Court is plaintiff Roger Moore's motion to dismiss this chapter 7 case or deny Debtor's discharge under § 727(a).[1] Having considered the trial evidence, the Court concludes that the motion to dismiss should not be granted but that the discharge must be denied under § 727(a)(2) and (a)(4). The Court will deny or defer ruling on Plaintiff's other requested relief, and also will defer ruling on Debtor's quiet title counterclaim. The deferred issues will be determined in connection with Debtor's motion to avoid Plaintiff's judgment lien under § 522(f).

---

[1] Unless otherwise indicated, statutory references are to 11 U.S.C.

I.  Facts

The Court finds:

Plaintiff represented Debtor in a child custody matter beginning in June 2010. Debtor and Plaintiff signed a retainer agreement on August 26, 2010,[2] which contained the following:

> It is the clients' [sic] express understanding that, as of August 25, 2010, the balance of attorneys fees owed total: $15,565.83. Client expenses/costs total: $250.54. On August 26, 2010, the client will pay a lump sum in the amount of $4,000.00 dollars. The outstanding client expenses/cost will be paid first and the balance applied to the outstanding attorneys' fees. In addition, the client will receive a credit in the amount of $3,700.00 dollars. It is the express understanding of the client that an additional $3,000.00 dollars will be paid within three weeks of this agreement, and not later than the close of business (5:00 p.m.) September 15, 2010.

The agreement also provided that "any unpaid balance on account will accrue interest at a monthly rate of 2% of the balance due at the time of billing until paid in full."[3] Finally, the agreement provided that the "Client hereby grants the attorney a charging lien, against any and all real and personal property owned by the client, or, which the client has an interest, for any outstanding attorneys' fees and expenses/costs incurred as the result of the representation of the Client in the above captioned matter."

Debtor paid Plaintiff $4,000 on August 26, 2010, and another $3,000 on September 15, 2010. Debtor apparently made no other payments. On November 1, 2010, Plaintiff filed a

---

[2] The 2010 version of The New Mexico Rules of Professional Conduct (NMRPC) require that "The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation . . . ." Rule 16-105(B). It does not appear that Plaintiff complied with this rule.

[3] The NMPRC require that "A lawyer shall not make an agreement for, charge, or collect an unreasonable . . . amount for expenses." Rule 16-105(A). The Court questions whether the *ex post facto* agreement to pay 24% annual interest on unpaid fees complies with this rule. If the interest is an "unreasonable expense," then Plaintiff's attempt to enforce his judgment lien on Debtor's house may constitute an improper attempt to collect an unreasonable expense. The Court will deal with this issue when it addresses Debtor's § 522(f) motion.

$13,382.32[4] attorney charging lien on Debtor's house at 1112 David Court SW, in Albuquerque, New Mexico.[5] On January 21, 2011, Plaintiff sued Debtor in state court to collect the debt. Plaintiff got a default judgment on March 1, 2011 for $18,732.64, plus post-judgment interest at 24%. Plaintiff recorded a transcript of the judgment in Bernalillo County on March 17, 2011, creating a judgment lien on Debtor's house.[6]

In February 2018 Plaintiff sued to foreclose his judgment lien on Debtor's house. By then, thanks to the 24% interest rate, the judgment debt had mushroomed to more than $50,000.[7] The foreclosure action prompted Debtor to file this chapter 7 case.[8]

Debtor's initial bankruptcy schedules were prepared by his first bankruptcy counsel. Debtor listed his house in schedule A, valued at $55,000. He claimed it exempt under the New Mexico homestead exemption. In schedule B Debtor listed two vehicles—a 1993 Toyota Corolla, valued at $900, and a 2006 Isuzu i-280 pickup truck, valued at $3,000.

The § 341 meeting was held on October 11, 2019. Plaintiff was the only creditor in attendance. Debtor appeared with his new counsel, Michael Daniels. At the meeting Debtor

---

[4] Plaintiff could not remember why the lien amount was so high (it should have been about $5,110, based on the $7,000 in payments and the $3,700 credit), but thought that he may have done more legal work for Debtor after the retainer agreement was signed.

[5] The charging lien was improper and legally ineffective. "In New Mexico there are four requirements for the imposition of an attorney charging lien"—among them is the existence of a judgment or fund in favor of the client that resulted from the attorney's services. *Sowder v. Sowder*, 127 N.M. 114, 117 (Ct. App. 1999). The house is not such a fund. Further, the language quoted above did not grant Plaintiff a consensual lien on the house. *See, e.g.*, N.M.S.A. § 47-1-5 (signing of conveyances), and N.M.S.A. § 47-1-44(6) (a form of mortgage).

[6] Inexplicibly, on August 27, 2014, Plaintiff filed a notice of lis pendens against Debtor's house, giving notice of the collection action. The filing was improper for two reasons: final judgment had been entered, so the action was no longer pending, and the action did not concern the house.

[7] Two and a half years have elapsed since the foreclosure complaint was filed. Additional interest of $11,239.58 has accrued, meaning that Plaintiff's total lien claim exceeds $61,000.

[8] Before Debtor filed this case, he filed a motion in the foreclosure action for permission to amend his answer to include, inter alia, a claim of a homestead exemption. The state court denied the motion but reserved ruling on whether Debtor could assert the homestead exemption.

affirmed under oath that he had reviewed his bankruptcy schedules and that they truly and correctly listed all of his assets.

Plaintiff questioned Debtor at the meeting. Using a Google Maps photograph of Debtor's house that was about five years old, Plaintiff asked about a number of vehicles in the picture other than the Corolla and the i-280.[9] Debtor testified that the vehicles had once belonged to him but that he had sold or given them all away five years before. Debtor testified that except for the Corolla, the i-280, the yellow pickup, and a Willys Jeep,[10] the vehicles were no longer on his property. Debtor said he did not know if the new owners had registered the vehicles after buying them.

Debtor testified that he had given the yellow pickup to his son "four or five years" earlier,[11] but it was still at his house because "we're still working on it. It still needs work." He admitted that the truck was "probably still in [his] name." Debtor also testified that he had sold the Chevelle and the Corvette "about five years ago. I sold almost all of them about that time."

On October 15, 2019, the chapter 7 trustee entered a "no asset" report.

On December 9, 2019, Plaintiff filed this adversary proceeding, asserting that Debtor's discharge should be denied under § 727(a) because of his failure to disclose ownership of vehicles in his schedules and to testify truthfully about them at his § 341 meeting.[12]

---

[9] Namely, a yellow 1978 Chevy C-10 pickup truck, a 1970 Chevrolet Chevelle, a 1974 Chevrolet Corvette, a 1972 Chevrolet Blazer, a 1972 Chevrolet stepside pickup truck, and a Honda ATV.
[10] The Jeep must have been in another picture. It cannot be seen in the photograph in evidence.
[11] Based on Debtor's testimony, Debtor's son would have been about twelve at the time.
[12] The amended complaint also seeks a denial of Debtor's homestead exemption, an order requiring the sale of Debtor's House to satisfy Plaintiff's lien or, in the alternative, an order "surrendering" the property to him. Finally, Plaintiff claims that Debtor's House is undervalued—alleging "upon information and belief" that its market value "far exceeds the amount of $55,300 . . . asserted by [Debtor.]"

On December 11, 2019, Plaintiff emailed a letter to the chapter 7 trustee, the United States Trustee's office, and Mr. Daniels, attaching Motor Vehicles Division (MVD) records that show Debtor is the registered owner of a motorcycle (make, model, and year unknown); two utility trailers, and the yellow pickup.

Debtor filed an amended schedule B on December 12, 2019, adding the yellow pickup (valued at $200) and a 1995 Honda ATV (also valued at $200). The amendment was prepared by Debtor's first bankruptcy counsel but filed by Mr. Daniels.

On February 9, 2020, Plaintiff filed a motion to dismiss the case for cause, alleging the same matters raised in this adversary proceeding. The Court consolidated the motion with this proceeding.

On April 2, 2020, Debtor amended his schedule B a second time. The second amendment added the two trailers (each valued at $500); the Blazer (valued at $600); the stepside pickup (valued at $700); the Chevelle (valued at $150); the Corvette (valued at $150); the motorcycle (valued at $3,000); and a boat (valued at $500).

On April 9, 2020, Plaintiff served "Plaintiff First Set of Requests for Admissions." The requests asked Debtor to "admit and deny"[13] that he was the "sole owner or interest holder" of certain vehicles on the petition date and the § 341 meeting date. Debtor initialed "admit" as to the yellow pickup, the trailers, the Blazer, the stepside pickup, the Corvette, the motorcycle, the ATV, and the boat. The Chevelle was not mentioned.

Debtor's ability to read and write appears to be limited. He is unemployed and receives social security disability income of $900 a month. Although he was and is assisted by able counsel, his understanding of the bankruptcy process and the bankruptcy schedules seems incomplete.

---

[13] This must be a typographical error.

At trial Debtor admitted that he owned the trailers and the boat. He testified that he did not list these assets on his initial schedule B because he did not think they were "vehicles" and understood that his disclosure obligation was limited to vehicles.

Debtor also testified at trial that he no longer owns any cars or trucks other than the Corolla and the i-280. Debtor testified that he sold the stepside truck for $300-$400 to a buyer who wanted it for parts; that he gave the ATV to his son as a gift; and that he sold the motorcycle for $5,000 to a David Santistevan. Debtor does not remember what happened to the Blazer—which he said was only useful for parts—but Debtor testified that he does not have it and does not know where it is. Debtor testified that he used to have the vehicle titles but lost access to them during his divorce. Instead of delivering the titles, Debtor gave the new owners bills of sale. Debtor acknowledges that the MVD's records Plaintiff obtained show that he owns the motorcycle and the yellow pickup.

Debtor testified at trial that he had given the yellow pickup to his niece, that it was hers, that she had registered it in her name, that she had driven it for several years, but that he had borrowed it from her because the i-280 needed a fuel pump. Minutes later, in response to the Court's query, Debtor testified that he had *sold* the pickup to his niece "about five years ago" for a "little bit of money"—estimated to be two hundred dollars. This testimony is totally inconsistent with his § 341 meeting testimony.

Finally, Debtor testified at trial that he had given the Chevelle and the Corvette to his sister because she had helped him out with some of his legal bills and he could not pay her back. This testimony also is quite different from Debtor's § 341 meeting testimony.

The inconsistent testimony about the yellow pickup, the Chevelle, and the Corvette, together with Debtor's answers to Plaintiff's requests for admissions and Debtor's rolling-

disclosure approach to his assets, seriously undermine the Court's confidence in Debtor's truthfulness in these proceedings.

## II. Discussion

### A. The Motion to Dismiss.

Under § 707(a), any interested party may move to dismiss a chapter 7 case "for cause." *In re Palmer*, 419 B.R. 762, 767-68 (Bankr. M.D. Tenn. 2009). Although "cause" may broadly encompass a "lack of good faith," "[w]here the Bankruptcy Code provides a specific remedy for misconduct, a [c]ourt may not dismiss a chapter 7 case under the more general 'cause' standard based exclusively or primarily on that conduct." *In re Quinn*, 490 B.R. 607, 617 (Bankr. D.N.M. 2012). Thus, a motion to dismiss for cause may not be based on the same conduct underlying objections to discharge under § 727. *Id.* at 617; *see also In re Padilla*, 222 F.3d 1184, 1192 (9th Cir. 2000) (debtor misconduct addressed by one Code section must be analyzed under that section).

Plaintiff seeks dismissal under § 707. Because the grounds for the motion are the same as the grounds for Plaintiff's § 727 complaint, the Court will deny the motion to dismiss and consider the issues raised under § 727.

### B. The § 727(a) Claim.

The "denial of a debtor's discharge is a drastic remedy[,]" *In re Antoniou*, 527 B.R. 71, 78 (Bankr. E.D.N.Y. 2015), that should "be reserved for a truly pernicious debtor." *In re Mosley*, 501 B.R. 736, 742 (Bankr. D.N.M. 2013). "The provisions denying the discharge are construed liberally in favor of the debtor and strictly against the creditor." *Id.* at 742. "However, the 'fresh start' policy embodied in the Bankruptcy Code is limited to the 'honest but unfortunate debtor.'" *In re Ritchie*, 543 B.R 311, 319 (Bankr. D.N.M. 2015). Plaintiff argues that Debtor should be denied a discharge under § 727(a) because he failed to disclose ownership of a number of vehicles

on his initial bankruptcy petition, at the § 341 meeting, and in his first amended schedules, and because he gave false testimony at his § 341 meeting and at trial.

In relevant part, § 727 provides:

> (a) The court shall grant the debtor a discharge, unless--
> . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition; [or]
> . . .
> (4) the debtor knowingly and fraudulently, in or in connection with the case-
> (A) made a false oath or account[.]

C.  § 727(a)(2).

"Section 727(a)(2) is intended to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing[14] or otherwise disposing of assets." 6 Collier on Bankruptcy ¶ 727.02[1]. Since Plaintiff's concealment argument relates to Debtor's initial and amended bankruptcy schedules and to statements made at the § 341 meeting, it encompasses subsections § 727(a)(2) (A) and (B). *See, e.g., In re Hadley*, 70 B.R. 51, 53 (Bankr. D. Kan. 1987) (a debtor's failure to list property is strong evidence of concealment); *In re Sowers*, 229 B.R. 151, 157 (Bankr. N.D. Ohio 1998) ("not disclosing information at a § 341 meeting constitutes a concealment occurring after the filing of the bankruptcy petition.").

To prevail in his § 727(a)(2)(A) claim, Plaintiff is required to prove by a preponderance of the evidence that: "(1) the debtor . . . concealed . . . , (2) property of the estate, (3) within one year prior to the bankruptcy filing, (4) with the intent to hinder, delay, or defraud a creditor." *In re*

---

[14] Plaintiff is proceeding only under a concealment theory.

*Wreyford*, 505 B.R. 47, 55 (Bankr. D.N.M. 2014); *In re Brown*, 108 F.3d 1290, 1293 (10th Cir. 1997) (same). Elements 1, 2, and 4 are the same under § 727(a)(2)(B), while element 3 requires post-petition concealment. *Sowers*, 229 B.R. at 156. The "critical pieces" of a § 727(a)(2) analysis are an act of concealment involving the debtor's property and a subjective intent to hinder, delay, or defraud a creditor. *In re Gordon*, 509 B.R. 359, 371 (Bankr. N.D. Okla. 2014); *see also Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) (identifying "two components," i.e., a transfer or concealment and improper intent).

    1.    <u>Concealment</u>. "Concealment, in general, is when a debtor hides property or withholds information about an asset otherwise required to be disclosed by law." *Ritchie*, 543 B.R. at 319. Section 727(a)(2) concealment can take many forms, including "preventing discovery, fraudulently transferring[,] or withholding knowledge or information required by law to be made known." *In re Marcus-Rehtmeyer*, 784 F.3d 430, 442 (7th Cir. 2015); *see also* Collier, *supra*, ¶ 727.02[6][b] ("Concealment is not confined to physical secretion. It covers other conduct, such as placing assets beyond the reach of creditors or withholding knowledge of the assets by failure or refusal to divulge owed information."). Omitting assets from a bankruptcy schedule may be a form of concealment. *In re Lamey*, 574 B.R. 240, 248 (Bankr. D.N.M. 2017). As well, "[c]oncealment may be accomplished by transfer of title coupled with the retention of the benefits of ownership." *In re Portnoy*, 201 B.R. 685, 694 (Bankr. S.D.N.Y 1996); *In re Garland*, 417 B.R. 805, 816 (10th Cir. BAP 2009) (a debtor may conceal an asset by transferring legal title while continuing to use it); *In re Gordon*, 526 B.R. 376, 388 (10th Cir. BAP 2015) (debtors who retain beneficial use of property and treat it as their own despite transfer of legal title must disclose their interest in the property).

The Court finds that Debtor concealed the boat, the trailers, the yellow pickup, the Chevelle, and the Corvette.

2. <u>Intend to defraud</u>. "To deny a discharge under § 727(a)(2), a court must find *actual* intent to defraud creditors." *In re Warren*, 512 F.3d 1241, 1249 (10th Cir. 2008) (emphasis in original); *In re Watman*, 301 F.3d 3, 8 (1st Cir. 2002) (actual, not constructive, intent required). Fraudulent intent "may be established by circumstantial evidence, or by inferences drawn from a course of conduct." *Farmers Co-op Ass'n of Talmage, Kan. v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982). The debtor's credibility and demeanor inform the Court's intent determination, *In re Watman*, 301 F.3d at 8, which may be guided, as well, by finding objective indicia or "badges" of fraud.[15] *In re Splawn*, 376 B.R. 747, 755 (Bankr. D.N.M. 2007); *Garland*, 417 B.R. at 815.

The Court, after hearing Debtor's testimony, observing his demeanor, and considering the relevant "badges of fraud," finds that Debtor's initial concealment of the two utility trailers and the boat may have been due to a misunderstanding of his disclosure obligations. While the omission reflects a degree of carelessness, it does not necessarily indicate an actual intent to defraud creditors. In other words, the concealment may have been inadvertent rather than fraudulent. *See, e.g., Garland*, 417 B.R. at 815 ("[M]istake or inadvertence is not sufficient to bar a debtor's discharge."); *Brown*, 108 F.3d at 1294 (a debtor should not be penalized for inadvertence).

---

[15] "Badges of fraud" include: (1) concealment of prebankruptcy conversions; (2) conversion of assets immediately before the filing of the bankruptcy petition; (3) gratuitous transfers of property; (4) continued use by the debtor of transferred property; (5) transfers to family members; (6) obtaining credit to purchase exempt property; (7) conversion of property after entry of a large judgment against the debtor; (8) a pattern of sharp dealing by the debtor prior to bankruptcy; (9) insolvency of the debtor resulting from the conversion of the assets; and (10) the monetary value of the assets converted. *In re Splawn*, 376 B.R. at 755.

The Court is forced to draw a different conclusion about the yellow pickup truck, the Chevelle, and the Corvette. The preponderance of the evidence is that Debtor concealed these vehicles with an intent to hinder or defraud Plaintiff. Debtor's testimony about them is contradictory. At his § 341 meeting, Debtor testified that he gave the pickup truck to his son. At trial, Debtor testified that he sold it to his niece. At the § 341 meeting, Debtor stated or implied that the pickup had always been in his possession. At trial, Debtor testified that until recently it had been in his niece's possession.

Debtor's testimony about the Chevelle and the Corvette is similarly inconsistent—at the § 341 meeting Debtor testified that he sold them about five years before, while at trial he testified that he gave them to his sister.

In addition to Debtor's contradictory testimony, his schedules and discovery responses bolster the conclusion that Debtor has not testified truthfully and has made material written misrepresentations under oath. *See In re Dupre*, 145 Fed. App'x 855, 856 (5th Cir. 2005) (inconsistent testimony and repeated schedule omissions show a pattern of dishonesty and support a finding of fraudulent intent).

The Court concludes that Plaintiff has carried his burden of proving his § 727(a)(2) claim.

D.     § 727(a)(4)(A).

Denial of a discharge under § 727(a)(4)(A) requires the movant to prove by a preponderance of the evidence: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with intent to defraud; and (5) the statement related to the bankruptcy case in a material way." *In re Stamat*, 635 F.3d 974, 978 (7th Cir. 2011); *Brown*, 108 F.3d at 1294 (same).

1. <u>Debtor made false statements under oath</u>. There is no question that the first two elements are satisfied because Debtor failed, in his initial schedules and at the § 341 meeting, to disclose the trailers and the boat, which he admits he owned on the petition date. *In re Korte*, 262 B.R. 464, 474 (8th Cir. BAP 2001) ("Statements made in schedules are signed under penalties of perjury and have 'the force and effect of oaths,' and testimony elicited at the first meeting of creditors is given under oath."). These elements are satisfied as well by comparing Debtor's trial testimony about the yellow pickup, the Chevelle, and the Corvette with his § 341 meeting testimony about these vehicles. The versions cannot be reconciled.

2. <u>The statements were material to the bankruptcy</u>. The fifth element is also satisfied because the omissions concerned Debtor's assets. *See Garland*, 417 B.R. at 814.

3. <u>Debtor's knowledge and intent</u>. For the reasons discussed above, the Court finds that the false oaths about the trailers and boat were not made with fraudulent intent. The same cannot be said for the yellow pickup, the Chevelle, and the Corvette, however. These vehicles were the subject of irreconcilable testimony. The Court finds that Debtor knew at some point he was not telling the truth about them. Furthermore, the fact that Debtor disclosed the three vehicles, among others, only in reaction to Plaintiff's unrelenting pursuit tends to prove, rather than cure, the fraud. *See, e.g., In re Croft*, 500 B.R. 823, 859 (Bankr. W.D. Tex. 2013) (a debtor who cures omissions by amending schedules only after his "wrongful and reckless conduct has been exposed" cannot "escape the consequences" of the fraudulent intent revealed thereby); *In re Stamat*, 395 B.R. 59, 76 (Bankr. N.D. Ill. 2008), aff'd, 2009 WL 2916834 (N.D. Ill.), aff'd, 635 F.3d 974 (7th Cir. 2011) ("Debtors should not be rewarded for omitting information about assets by allowing them to amend their schedules after they have been caught.").

The Court concludes that Plaintiff has carried his burden of proving the § 727(a)(4) claim.

-12-
Case 19-01082-t    Doc 38    Filed 08/07/20    Entered 08/07/20 13:46:34 Page 12 of 13

III.   Conclusion

Debtor's concealment of and false testimony about his yellow pickup, Chevelle, and Corvette render him ineligible for a discharge in this case under § 727(a)(2) and (4). All other relief requested by the parties will be denied or deferred to the § 522(f) contested matter. The Court will enter a separate judgment consistent with this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 7, 2020
Copies to: Counsel of Record